**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

| | | |
|---|---|---|
| **ANTON GOTCHOV MIKOV,** | § | **CASE NO:** |
| | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **vs.** | § | |
| | § | |
| **VILLAGE OF PALM SPRINGS,** | § | |
| | § | |
| | § | **TRIAL BY JURY DEMANDED** |
| **Defendant.** | § | |
| | § | |

<u>**PLAINTIFF'S ORIGINAL COMPLAINT**</u>

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Plaintiff, ANTON GOTCHOV MIKOV, by and through his undersigned counsel, files this Complaint against Defendant, VILLAGE OF PALM SPRINGS ("VILLAGE"), under 42 U.S.C. § 1981, 42 U.S.C. § 2000e, and 29 U.S.C. § 621 and states as follows:

<u>**INTRODUCTION**</u>

1.      Plaintiff files this Complaint and complains of discrimination on the basis of race, national origin, sex, and age under Section 1981 of the Civil Rights Act of 1876 (42 U.S.C. § 1981 et seq. as amended), Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq. as amended), and the Age Discrimination in Employment Act of 1967 (29 U.S.C. §621 et seq., as amended) and on the basis of retaliation against him for his race, national origin, sex and age discrimination complaints pursuant to those statutes.

2.      This action seeks lost pay in the past and future, compensatory and punitive damages,

emotional distress and mental anguish damages, liquidated damages, and attorneys' fees.

## PARTIES

3.        Plaintiff, Anton Gotchov Mikov, is a resident of West Palm Beach, Florida.

4.        Defendant, Village of Palm Springs, is a local municipal government formed under the laws of the State of Florida, located in Palm Beach County, Florida, and operates and controls the Village of Palm Springs Utility Department where Plaintiff was employed. At all times relevant hereto, Defendant employed fifteen (15) or more employees for twenty (20) weeks or more during any relevant period of time.

## VENUE

5.        Venue is appropriate in the United States District Court for the Southern District of Florida in which a substantial part of the events or omissions giving rise to the Plaintiff's case occurred, as required under 28 U.S.C. § 1391.

## JURISDICTION

6.        This Court has original jurisdiction of this action pursuant to 28 U.S.C. §1331, as it involves federal questions.

7.        The unlawful employment practices were committed within the jurisdiction of this Court.

## PROCEDURAL REQUISITES

8.        Plaintiff has met all conditions precedent to the filing of this action. Plaintiff filed his Charge of Discrimination with the United States Equal Employment Opportunity Commission (EEOC) on January 18, 2022. The EEOC issued a Notice of Right to Sue letter on May 1, 2023. On July 28, 2023, Plaintiff filed a pro se lawsuit, case number 23-81094-CIV-CANNON, no more than

90 days after receiving the Notice of Right to Sue. On July 31, 2023, Judge Aileen M. Cannon issued

an order dismissing Plaintiff's aforementioned case without prejudice to file an amended complaint.

On September 27, 2023, Plaintiff filed Plaintiff's First Amended Complaint.  On September 28, 2023,

Judge Cannon issued an order dismissing Plaintiff's First Amended Complaint without prejudice to

file a new action.

9.      This lawsuit has been filed within the statute of limitations as required under (28

U.S.C. § 1658) and 42 U.S.C. §1981.

## FACTS

10.      From October 1998, until he was fired on November 5, 2021, Plaintiff was employed

by Defendant as a Field Service II worker.

11.      On December 9, 2011, Plaintiff filed U.S. EEOC Charge 510-2012-00493 against the

Village of Palm Springs, alleging national origin discrimination, harassment, and retaliation.

12.      On March 12, 2018, Plaintiff filed U.S. EEOC Charge Number 510-2018-03068

against the Village of Palm Springs, alleging age discrimination and retaliation.

13.      On October 15, 2018, Plaintiff filed U.S. EEOC Charge Number 510-2019-00252

against the Village of Palm Springs and Supervisor Orlando Guzman alleging a continuing violation

of age and national origin discrimination.

14.      On January 18, 2022, Plaintiff filed Palm Beach County Office of Equal Opportunity

FEPA Charge Number 2200090.  The Charge was dual filed as U.S. EEOC Charge Number 15M-

2022-00023 alleging retaliation, national origin, age, and sex discrimination.

15.      On July 16, 2022, Plaintiff filed an amendment to Charge Number 15M-2022-00023

with supplemental information.

16.      The EEOC issued its Notice of Right To Sue on Charge Number 15M-2022-00023 on

May 1, 2023 and suit was timely filed, following the issuance of that Notice of Right to Sue.

17.     During his employment, Plaintiff was subjected to discrimination and harassment based on his race (Slavic), national origin (Bulgarian), age (over 50 years), and his sex/sexual orientation (straight male); and after Plaintiff complained about the discrimination, Defendant retaliated against him by subjecting him to a hostile work environment because he made those complaints.

18.     Plaintiff is the only employee of Slavic origin working for Defendant between 1998 and 2021.  Plaintiff was born in Bulgaria and speaks with a Bulgarian/Russian accent.

19.     At the time of Plaintiff's termination, he was working at the Utilities Department under the supervision of Lazaro Farley and Director Paul Ward.

20.     The Discrimination that Plaintiff was subjected to on a regular, daily, and consistent basis commenced in 1998 and continued up and through the date of Plaintiff's termination on November 5, 2021.

21.     The retaliation Plaintiff experienced as alleged supra commenced immediately upon Plaintiff reporting the discrimination he endured to Defendant's agents.

22.     At all times relevant hereto Defendant's agents have referred to Plaintiff as "the Russian," "fagot," "spy," "the enemy," "stupid," "weak," "crazy," "abnormal," and "dusty" because of his sexual orientation, national origin, race, and his age.

23.     Prior to the pertinent EEOC Charge filed in 2022, Plaintiff filed multiple charges with the EEOC due to the continuous discrimination and harassment experienced while working for Defendant, as shown by the following events:

    a.  On or about 2013, Plaintiff was working in a water main line on Davis Road in front of the City Hall of the Village of Palm Springs. In the presence of Village Manager Karl Uremberger, Director William Davis, Supervisor Paul Teresi, and

4

other colleagues, Superintendent Mike Snook falsely asserted that Plaintiff is a "pedophile." Plaintiff, suffering from embarrassment, left and jumped into one of Defendant's unoccupied cars to avoid further embarrassment.

b. On a subsequent occasion, Plaintiff was humiliated because of his sexual orientation and his national origin while working at Defendant's Main Water Plant, which is an open warehouse space where multiple employees are continuously working or waiting for work to be assigned, by one of Defendant's management employees. Plaintiff encountered Ed Horton and Supervisor Paul Teresi. Randomly, Ed Horton asked Plaintiff, "Hey Tony (Plaintiff) can I ask you something? Why don't you suck my dick?" Plaintiff reported the sexual harassment conduct to Superintendent Mike Snook, but no action was taken by Defendant that stop the discriminatory conduct.

c. On or about 2016, Plaintiff reported to the Village manager, Richard Riede, that he was being subject to discrimination and harassment from Supervisor Carlos Enriquez calling him "a faggot" and "a Russian." After reporting Supervisor Carlos Enriquez's behavior, Plaintiff was retaliated against by Supervisor Carlos Enriquez by continuing the discriminatory insults due to Plaintiff's sex, race, and national origin.

d. On or about 2017, Plaintiff was humiliated in front of his colleagues when Joel Santiago publicly announced loudly, "Tony, I am now convinced that you are not a fagot!". The word "faggot" is humiliating, derogatory, and hateful.

24.     From 2019 until November 5, 2021, Plaintiff suffered from severe and pervasive discriminatory conduct, targeted as an "enemy", and a "spy" and retaliated against after Plaintiff's multiple EEOC Charges complaining about Defendant's harassment and discriminatory practices, in

5

the same nature as described above.

25.     Defendant's agents would use derogatory, taunting, and discriminatory terms in reference to Plaintiff like "old", "dusty", and "weak" due to Plaintiff's age, (over 50).

26.     Younger, non-Slavic employees were treated and rated differently and more favorably than Plaintiff.  Younger, non-Slavic employees in the Utilities Department were not required to have the licenses and training required of Plaintiff.   Younger, non-Slavic employees were being considered, and given promotions ahead of Plaintiff.

27.     Plaintiff complained about the disparate, derogatory, and discriminatory behavior to Defendant's Human Resources agent Janette Piedra. Upon receiving Plaintiff's complaint, Defendant's Human Resources agent Janette Piedra recommended that Plaintiff should consider retirement due to his age.

28.     During Plaintiff's time working for Defendant, Plaintiff was constantly harassed by Defendant's agents who were non-Slavic. For instance, Supervisor Paul Terezi, Supervisor Carlos Enriquez, Supervisor Andrew Klausner, Supervisor Orlando Guzman, and Foreman Joel Santiago (hereinafter "supervisors") made verbal discriminatory attacks against the Plaintiff by consistently calling him "the Russian," even after Plaintiff informed them that he is not Russian.

29.     Throughout his employment, Plaintiff complained to Defendant that he disliked being called "the Russian" because he found it to be humiliating, taunting, and belittling of his Slavic race and Bulgarian national origin.  Plaintiff explained Defendant's management employees that he was not born in Russia, he has never visited Russia, that Bulgaria is in an ancient European country, and that he was offended when being called "the Russian."

30.     The conduct of Defendant's management employers caused Plaintiff to become known by colleagues in the Utilities Department, employees from other departments, and residents of the Village of Palm Springs as "the Russian."

6

31.     In retaliation for his discrimination complaints, Defendant's agents, supervisors, and directors subjected Plaintiff to further mockery, taunting, and discrimination by utilizing the nickname "the Russian," and further used other discriminatory language, stereotypically associated with Russians, like "enemy", and "spy.  The discriminatory verbal attacks upon Plaintiff became widely spread and pervasive in the work environment of the Village of Palm Springs.

32.     In response to Plaintiff's numerous objections and complaints to managers, supervisors, and human resources, Defendant, through its directors, managers, and supervisors, threatened to fire Plaintiff multiple times because of Plaintiff's complaints of discrimination and harassment.

33.     As a result of Plaintiff being subjected to the humiliation, harassment, and discrimination of being called "the Russian," Plaintiff was accused of being violent, prone to attacks using firearms, and wanting to create a shooting at the workplace.

34.     As a result of Plaintiff being subjected to the discrimination in the form of the humiliation, of being wrongfully accused of being a "pedophile" by Defendant's management employees, law enforcement agents commenced an investigation of Plaintiff.  When the police arrived at the Defendant's Utility Department facility looking for Plaintiff, Supervisor Carlos Enriquez of Defendant walked into the workplace yelling: "We caught the Russian!" Supervisor Carlos Enriquez continued stating that Defendant's employees have been chasing Plaintiff due to his race, and national origin and that they have "finally caught the Russian."

35.     As a result of the discrimination of false allegations and the police investigation, Plaintiff suffered severe emotional distress, which caused him to suffer a heart attack.

36.     At or about June 2019, Defendant was subject to a cyber hack and was reportedly forced to pay ransom.  During the time of the hack, one of Plaintiff's supervisors, Orlando Guzman, accused Plaintiff of being responsible for the hack in front of his coworkers stating, "maybe the

Russian did it."

37.     At or about the end of 2019, Plaintiff did not get recognized by Defendant for working for Defendant for twenty (20) years.  Non-Slavic employees were previously publicly recognized for working for Defendant for fifteen (15) years, a lesser time than Plaintiff's time working for Defendant.  Defendant did not recognize Plaintiff's loyalty to Defendant because of Plaintiff's race, national origin, age, sexual orientation and in retaliation for his discrimination complaints.

38.     Plaintiff made multiple attempts to meet with Defendant's management, directors, and/or supervisors to complain about the on-going discrimination. However, Defendant's agents maliciously, purposefully, and knowingly denied Plaintiff the opportunity to express his complaints.

39.     On April 10, 2020, Plaintiff again complained to Human Resources and Defendant's Village manager about the on-going incidents of harassment and discrimination, including that:

  a.  On or about the end of 2019 and the beginning of 2020, Plaintiff told Supervisor Andrew Klausner that Plaintiff did not watch TV, nor did he like to use social media; and that Andrew Klausner told Defendant's manager and/or director, Ron Eyman, who then said that Plaintiff did not watch TV or use social media due to his (old) age and;

  b.  On a separate occasion, Defendant's agent, Dean, a co-worker at Defendant sent text messages to Plaintiff where he expressed his desire for Plaintiff to perform oral sex on him (Dean).

40.     During the April 10, 2020, meeting, Defendant's agents reprimanded Plaintiff for his complaints, stating that his complaints wasted management's time and resources.  Defendant's agents threatened to issue Plaintiff a disciplinary write-up notice because of his discrimination complaints.

41.     After the April 10, 2020, meeting with Human Resources and the Village City Manager, Plaintiff continued to suffer from harassment.  On April 16, 2020, Plaintiff sent an email

to Defendant's Human Resources representative, Janette Piedra, reporting the new public harassment of Supervisor Paul Teresi calling him a "Russian" after he expressed again his disapproval of being referred as a "Russian."

42.     At or about the summer of 2020, while Plaintiff was preparing for his annual vacation trip to Bulgaria, Defendant suspended Plaintiff.  Defendant did not provide a reason or explanation for the suspension.  Supervisor Paul Teresi told Plaintiff to enjoy his vacation and not to worry because the suspension was meaningless.

43.     Despite Paul Teresi's statement before Plaintiff left for his annual vacation, Plaintiff suffered a five-day suspension without pay.  Defendant did not provide a reason or explanation for the five-day suspension without pay.

44.     In May 2021, a co-worker called Plaintiff; "Faggot" and sent Plaintiff a text directing him to "suck my d***."  Plaintiff complained to Defendant about the co-worker's behavior as being part of a hostile work environment, but no corrective action was taken.

45.     On November 5, 2021, Plaintiff met with Defendant's Interim Village Manager, Michael Bornstein, who informed Plaintiff of Defendant's decision to fire him.  Plaintiff requested an explanation for being fired.

46.     During the November 5, 2021, meeting, Village Manager Michael Bornstein stated that Plaintiff had made a name for himself by complaining repeatedly to management and the EEOC, that Village Manager had given Plaintiff time to clean his name, but Defendant's decision was made to defend Defendant's public interest.  As such, Plaintiff was fired in retaliation for his complaints about discrimination and a hostile work environment.

## COUNT I: RACE and NATIONAL ORIGIN DISCRIMINATION UNDER 42 U.S.C. §1981

47.     Plaintiff incorporates the allegations made in Paragraphs 1 through 46, herein.

48.     Title 42 U.S.C. §1981, *inter alia*, protects at-will employees from intentional

9

employment discrimination because of their race or national origin ancestry. *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 611-613 (1987). At-will employment is a form of contract protected by 42 U.S.C. §1981 from intentional discrimination. *Miller v. Bed, Bath & Beyond, Inc.*, 185 F. Supp. 2d 1253 (11th Cir. 2002).

49.     Plaintiff was the only employee of Slavic origin working for Defendant from 1998 through 2021. Plaintiff was born in Bulgaria and speaks with a Bulgarian accent.

50.     At the time of Plaintiff's termination, he was working at the Utilities Department under the supervision of Lazaro Farley and Director Paul Ward.

51.     The discrimination that Plaintiff was subjected to on a regular, daily, and consistent basis commenced in 1998 and continued up and through the date of Plaintiff's termination on November 5, 2021.

52.     Defendant by and through Director William Davis, Supervisors Paul Terezi, Carlos Enriques, Andrew Klausner, Karl Umberger, Orlando Guzman, and Fireman Joel Santigo, would tell other co-workers and residents of the Village of Palm Springs that Plaintiff was "the Russian," "fagot," "spy," "the enemy," "stupid," "weak," "crazy," "abnormal," and "dusty" because of his race and or national origin ancestry.

53.     On or about 2016, Plaintiff reported to the Village manager, Richard Riede, that he was being subject to discrimination and harassment from Supervisor Carlos Enriquez calling him "a faggot" and "a Russian." After reporting Supervisor Carlos Enriquez's behavior, Plaintiff was retaliated against by Supervisor Carlos Enriquez who continued the discriminatory insults due to Plaintiff's race and or national origin ancestry.

54.     From 2019 until November 5, 2021, Plaintiff suffered from severe and pervasive discriminatory conduct, targeted as an "enemy", and a "spy" and retaliated against after Plaintiff's multiple EEOC Charges complaining about Defendant's harassment and discriminatory practices,

in the same nature as described above.

55.     Non-Slavic, non-Bulgarian employees were treated and rated differently and more favorably than Plaintiff.  Non-Slavic, non-Bulgarian employees in the Utilities Department were not required to have the licenses and training required of Plaintiff.   Non-Slavic, non-Bulgarian employees were being considered, and given promotions ahead of Plaintiff.

56.     Plaintiff complained about the disparate, derogatory, and discriminatory behavior to Defendant's Human Resources agent Janette Piedra, but Ms. Piedra took no corrective action to stop the race and national origin discrimination.

57.     During Plaintiff's time working for Defendant, Plaintiff was constantly harassed by Defendant's agents who were non-Slavic and non-Bulgarian.  For instance, Supervisor Paul Terezi, Supervisor Carlos Enriquez, Supervisor Andrew Klausner, Supervisor Orlando Guzman, and Foreman Joel Santiago (all non-Slavic and Non-Bulgarian)(hereinafter "supervisors") made verbal discriminatory attacks against the Plaintiff by consistently calling him "the Russian," even after Plaintiff informed them that he is not Russian.

58.     Throughout his employment, Plaintiff complained to Defendant that he disliked being called "the Russian" because he found it to be humiliating, taunting, and belittling of his Slavic race and Bulgarian national origin ancestry.  Plaintiff explained Defendant's management employees that he was not born in Russia, he has never visited Russia, that Bulgaria is in an ancient European ethnicity/nation, and that he was offended when being called "the Russian."

59.     The discriminatory conduct of Defendant's management employers was continuous and so widely spread in the Village of Palm Springs that it caused Plaintiff to become known by colleagues in the Utilities Department, employees from other departments, and residents of the Village of Palm Springs as "the Russian."

60.     In retaliation for his discrimination complaints, Defendant's agents, supervisors, and

directors subjected Plaintiff to further mockery, taunting, and discrimination by utilizing the nickname "the Russian," and further used other discriminatory language, stereotypically associated with Russians, like "enemy", and "spy. The discriminatory verbal attacks upon Plaintiff became widely spread and pervasive in the work environment of the Village of Palm Springs.

61.     In response to Plaintiff's numerous objections and complaints to managers, supervisors, and human resources, Defendant, through its directors, managers, and supervisors, threatened to fire Plaintiff multiple times because of Plaintiff's complaints of discrimination and harassment.

62.     Defendant subjected Plaintiff to humiliation, harassment, and discrimination of being called "the Russian," prone to violence, attacks using firearms, and wanting to create a shooting at the workplace. Defendant's agents falsely advised law enforcement authorities that Plaintiff would engage in illegal activities.

63.     Law enforcement agents commenced an investigation of Plaintiff due to false allegations from Defendant's agents. When the police arrived at the Defendant's Utility Department facility looking for Plaintiff, Supervisor Carlos Enriquez of Defendant walked into the workplace yelling: "We caught the Russian!" Supervisor Carlos Enriquez continued indicating that Defendant's employees have been chasing Plaintiff due to his race and or national origin, stating that they have "finally caught the Russian."

64.     As a result of being subjected to the harassment and humiliation of false allegations by Defendant's management employees and the resulting police investigation, Plaintiff suffered severe emotional distress, which caused him to suffer a heart attack.

65.     At or about June 2019, Defendant was subject to a cyber hack and was reportedly forced to pay ransom. During the time of the hack, one of Plaintiff's supervisors, Orlando Guzman, accused Plaintiff of being responsible for the hack in front of his coworkers stating: "Maybe the

Russian did it."

66.     At or about the end of 2019, Plaintiff did not get recognized by Defendant for working for Defendant for twenty (20) years.  Non-Slavic employees were previously publicly recognized for working for Defendant for fifteen (15) years, a lesser time than Plaintiff's time working for Defendant.  Defendant did not recognize Plaintiff's loyalty to Defendant because of Plaintiff's race.

67.     Plaintiff made multiple attempts to meet with Defendant's management, directors, and/or supervisors to complain about the employment discrimination that he was suffering. However, often Defendant's agents maliciously, purposefully, and knowingly denied Plaintiff the opportunity to express his complaints.

68.     On April 10, 2020, Plaintiff again complained to Human Resources and Defendant's Village manager about the on-going incidents of harassment and discrimination, including that on or about the end of 2019 and the beginning of 2020, Plaintiff told Supervisor Andrew Klausner that Plaintiff did not watch TV, nor did he like to use social media; and that Andrew Klausner told Defendant's manager and/or director, Ron Eyman, who then said that Plaintiff did not watch TV or use social media due to his (old) age.

69.     On April 10, 2020, Plaintiff complained to Human Resources and Defendant's Village manager that Defendant's agent, Dean, a co-worker at Defendant sent text messages to Plaintiff where he expressed his desire for Plaintiff to perform oral sex on him (Dean).

70.     During the April 10, 2020, meeting, Defendant's agents reprimanded Plaintiff for his complaints, stating that his complaints wasted management's time and resources.  Defendant's agents threatened to issue Plaintiff a disciplinary write-up notice because of his discrimination complaints.

71.     After the April 10, 2020, meeting with Human Resources and the Village City

13

Manager, Plaintiff continued to suffer from harassment.  On April 16, 2020, Plaintiff sent an email to Defendant's Human Resources representative, Janette Piedra, reporting the new public harassment of Supervisor Paul Teresi calling him a "Russian" after he expressed again his disapproval of being referred as a "Russian."

72.     At or about the summer of 2020, while Plaintiff was preparing for his annual vacation trip to Bulgaria, Defendant suspended Plaintiff.  Defendant did not provide a reason or explanation for the suspension.  Supervisor Paul Teresi told Plaintiff to enjoy his vacation and not to worry because the suspension was meaningless.

73.     Despite Paul Teresi's statement before Plaintiff left for his annual vacation, Plaintiff suffered a five-day suspension without pay.  Defendant did not provide a reason or explanation for the five-day suspension without pay.

74.     On November 5, 2021, Plaintiff met with Defendant's Interim Village Manager, Michael Bornstein, who informed Plaintiff of Defendant's decision to fire him.  Plaintiff requested an explanation for being fired.

75.     During the November 5, 2021, meeting, Village Manager Michael Bornstein stated that Plaintiff had made a name for himself by complaining repeatedly to management and the EEOC, that Village Manager had given Plaintiff time to clean his name, but Defendant's decision to discharge Plaintiff was made to defend Defendant's public interest.  As such, Plaintiff was fired because of his race (Slavic) and national origin (Bulgarian).

76.     Defendant, by and through its agents and employees, engaged in the aforementioned practices, policies, customs, and usages made unlawful by 42 U.S.C. §1981.

77.     The Discrimination that Plaintiff was subjected to on a regular, daily, and consistent basis commenced in 1998 and continued up and through the date of Plaintiff's termination.

78.     Plaintiff was subjected to a hostile work environment by Defendant because of his

14

race.

79.    If Plaintiff had not been of the Slavic race and/or Bulgarian national origin, he would not have been subjected to a hostile work environment.

80.    Had Plaintiff not been of the Slavic race, Defendant would not have told Plaintiff that he was "the Russian," "fagot," "spy," "the enemy," "stupid," "weak," "crazy," "abnormal," and "dusty."

81.    Had Plaintiff not been of Bulgarian national origin, Defendant would not have told other co-workers and Village residents not to call Plaintiff "the Russian", "spy", "the enemy", "stupid", "weak", "crazy," and other such names.

82.    Had Plaintiff not been of the Slavic race and/or Bulgarian national origin, and regarded as Russian, Defendant would not have threatened to fire Plaintiff.

83.    Had Plaintiff not been of the Slavic race and Bulgarian national origin, and regarded as Russian, Defendant would not have subjected Plaintiff to continuous insults, epithets, and taunts.

84.    As a direct and proximate result of Defendant's conduct that violated 42 U.S.C. §1981, Plaintiff suffered and continues to suffer damages, including lost wages, emotional distress, and attorneys' fees and costs.

85.    Defendant's actions were intentional, willful, harsh, oppressive, reckless, and malicious, and as a further and proximate cause, Plaintiff has suffered severe emotional distress, pain, and suffering. The wrongs done by the Defendant were aggravated by its willfulness, wantonness, and maliciousness for which the law allows the imposition of exemplary damages. Plaintiff, therefore, seeks exemplary damages in a sum to be determined by the trier of fact to serve as punishment to deter Defendant from such conduct in similar situations.

86.    Defendant's actions as stated above, and the resulting damages to Plaintiff, have necessitated that Plaintiff retain the services of COANE AND ASSOCIATES, PLLC, to represent

him in these proceedings. Wherefore, Plaintiff seeks recovery of reasonable and necessary attorney's fees.

## COUNT II: HOSTILE WORK ENVIRONMENT BASED ON HARASSMENT UNDER 42 U.S.C. § 1981

87.     Plaintiff incorporates the allegations made in Paragraphs 1 through 46 herein.

88.     Title 42 U.S.C. §1981, inter alia, protects at-will employees from employment discrimination on the basis of race because at-will employment is a form of contract. *Miller v. Bed, Bath & Beyond, Inc.*, 185 F. Supp. 2d 1253 (11th Cir. 2002). Defendant offered to pay Plaintiff for his work, and Plaintiff accepted that offer and began performing the work. Thus, the parties entered into a contractual arrangement covered by 42 U.S.C. §1981.

89.     Plaintiff is the only employee of Slavic origin working for Defendant. Plaintiff was born in Bulgaria and speaks with a Bulgarian/Russian accent.

90.     At the time of Plaintiff's termination, he was working at the Utilities Department under the supervision of Lazaro Farley and Director Paul Ward.

91.     The Discrimination that Plaintiff was subjected to on a regular, daily, and consistent basis commenced in 1998 and continued up and through the date of Plaintiff's termination on November 5, 2021.

92.     The retaliation Plaintiff experienced as alleged supra commenced immediately upon Plaintiff reporting the discrimination he endured to Defendant's agents.

93.     At all times relevant hereto Defendant's agents have referred to Plaintiff as "the Russian," "fagot," "spy," "the enemy," "stupid," "weak," "crazy," "abnormal," and "dusty" because of his sexual orientation, national origin, race, and his age.

94.     Prior to the pertinent EEOC Charge filed in 2022, Plaintiff filed multiple charges

16

with the EEOC due to the continuous discrimination and harassment experienced while working for Defendant, as shown by the following events:

95.     On or about 2013, Plaintiff was working in a water main line on Davis Road in front of the City Hall of the Village of Palm Springs. In the presence of Village Manager Karl Uremberger, Director William Davis, Supervisor Paul Teresi, and other colleagues, Superintendent Mike Snook asserted that Plaintiff is a "pedophile." Plaintiff, suffering from embarrassment, left and jumped into one of Defendant's unoccupied cars to avoid further embarrassment.

96.     On a subsequent occasion, Plaintiff was humiliated because of his sexual orientation and his national origin while working at Defendant's Main Water Plant, which is an open warehouse space where multiple employees are continuously working or waiting for work to be assigned, by one of Defendant's management employees. Plaintiff encountered Ed Horton and Supervisor Paul Teresi. Randomly, Ed Horton asked Plaintiff, "Hey Tony (Plaintiff) can I ask you something? Why don't you suck my dick?" Plaintiff reported the sexual harassment conduct to Superintendent Mike Snook, but no action was taken by Defendant that stop the discriminatory conduct.

97.     On or about 2016, Plaintiff reported to the Village manager, Richard Riede, that he was being subject to discrimination and harassment from Supervisor Carlos Enriquez calling him "a faggot" and "a Russian." After reporting Supervisor Carlos Enriquez's behavior, Plaintiff was retaliated against by Supervisor Carlos Enriquez by continuing the discriminatory insults due to Plaintiff's sex, race, and national origin.

98.     On or about 2017, Plaintiff was humiliated in front of his colleagues when Joel Santiago publicly announced loudly, "Tony, I am now convinced that you are not a fagot!". The word "faggot" is humiliating, derogatory, and hateful.

99.     From 2019 until November 5, 2021, Plaintiff suffered from severe and pervasive discriminatory conduct, targeted as an "enemy", and a "spy" and retaliated against after Plaintiff's

17

multiple EEOC Charges complaining about Defendant's harassment and discriminatory practices, in the same nature as described above.

100.     Defendant's agents would use derogatory, taunting, and discriminatory terms in reference to Plaintiff like "old", "dusty", and "weak" due to Plaintiff's age, (over 50).

101.     Younger, non-Slavic employees were treated and rated differently and more favorably than Plaintiff.   Younger, non-Slavic employees in the Utilities Department were not required to have the licenses and training required of Plaintiff.   Younger, non-Slavic employees were being considered, and given promotions ahead of Plaintiff.

102.     Plaintiff complained about the disparate, derogatory, and discriminatory behavior to Defendant's Human Resources agent Janette Piedra.  Upon receiving Plaintiff's complaint, Defendant's Human Resources agent Janette Piedra recommended that Plaintiff should consider retirement due to his age.

103.     During Plaintiff's time working for Defendant, Plaintiff was constantly harassed by Defendant's agents who were non-Slavic. For instance, Supervisor Paul Terezi, Supervisor Carlos Enriquez, Supervisor Andrew Klausner, Supervisor Orlando Guzman, and Foreman Joel Santiago (hereinafter "supervisors") made verbal discriminatory attacks against the Plaintiff by consistently calling him "the Russian," even after Plaintiff informed them that he is not Russian.

104.     Throughout his employment, Plaintiff complained to Defendant that he disliked being called "the Russian" because he found it to be humiliating, taunting, and belittling of his Slavic race and Bulgarian national origin.  Plaintiff explained Defendant's management employees that he was not born in Russia, he has never visited Russia, that Bulgaria is in an ancient European country, and that he was offended when being called "the Russian."

105.     The conduct of Defendant's management employers caused Plaintiff to become known by colleagues in the Utilities Department, employees from other departments, and residents

of the Village of Palm Springs as "the Russian."

106.     In retaliation for his discrimination complaints, Defendant's agents, supervisors, and directors subjected Plaintiff to further mockery, taunting, and discrimination by utilizing the nickname "the Russian," and further used other discriminatory language, stereotypically associated with Russians, like "enemy", and "spy.  The discriminatory verbal attacks upon Plaintiff became widely spread and pervasive in the work environment of the Village of Palm Springs.

107.     In response to Plaintiff's numerous objections and complaints to managers, supervisors, and human resources, Defendant, through its directors, managers, and supervisors, threatened to fire Plaintiff multiple times because of Plaintiff's complaints of discrimination and harassment.

108.     As a result of Plaintiff being subjected to the humiliation, harassment, and discrimination of being called "the Russian," Plaintiff was accused of being violent, prone to attacks using firearms, and wanting to create a shooting at the workplace.

109.     As a result of Plaintiff being subjected to the humiliation, of being called a "pedophile" by Defendant's management employees, law enforcement agents commenced an investigation of Plaintiff.  After the police arrived at the Defendant's Utility Department facility looking for Plaintiff, Supervisor Carlos Enriquez of Defendant walked into the workplace yelling "We caught the Russian!" Supervisor Carlos Enriquez continued stating that Defendant's employees have been chasing Plaintiff due to his race, and national origin and that they have "finally caught the Russian."

110.     As a result of the false allegations and the police investigation, Plaintiff suffered severe emotional distress, which caused him to suffer a heart attack.

111.     At or about June 2019, Defendant was subject to a cyber hack and was reportedly forced to pay ransom.  During the time of the hack, one of Plaintiff's supervisors, Orlando Guzman,

accused Plaintiff of being responsible for the hack in front of his coworkers stating, "maybe the Russian did it."

112.    At or about the end of 2019, Plaintiff did not get recognized by Defendant for working for Defendant for twenty (20) years.  Non-Slavic employees were previously publicly recognized for working for Defendant for fifteen (15) years, a lesser time than Plaintiff's time working for Defendant.  Defendant did not recognize Plaintiff's loyalty to Defendant because of Plaintiff's race, national origin, age, sexual orientation and in retaliation for his discrimination complaints.

113.    Plaintiff made multiple attempts to meet with Defendant's management, directors, and/or supervisors. However, Defendant's agents maliciously, purposefully, and knowingly denied Plaintiff the opportunity to express his complaints.

114.    On April 10, 2020, Plaintiff again complained to Human Resources and Defendant's Village manager about the on-going incidents of harassment and discrimination, including that on or about the end of 2019 and the beginning of 2020, Plaintiff told Supervisor Andrew Klausner that Plaintiff did not watch TV, nor did he like to use social media; and that Andrew Klausner told Defendant's manager and/or director, Ron Eyman, who then said that Plaintiff did not watch TV or use social media due to his (old) age.

115.    On April 10, 2020, Plaintiff again complained to Human Resources and Defendant's Village manager that Defendant's agent, Dean, a co-worker at Defendant sent text messages to Plaintiff where he expressed his desire for Plaintiff to perform oral sex on him (Dean).

116.    During the April 10, 2020, meeting, Defendant's agents reprimanded Plaintiff for his complaints, stating that his complaints wasted management's time and resources.   Defendant's agents threatened to issue Plaintiff a disciplinary write-up notice because of his discrimination complaints.

20

117.     After the April 10, 2020, meeting with Human Resources and the Village City Manager, Plaintiff continued to suffer from harassment.  On April 16, 2020, Plaintiff sent an email to Defendant's Human Resources representative, Janette Piedra, reporting the new public harassment of Supervisor Paul Teresi calling him a "Russian" after he expressed again his disapproval of being referred as a "Russian."

118.     At or about the summer of 2020, while Plaintiff was preparing for his annual vacation trip to Bulgaria, Defendant suspended Plaintiff.  Defendant did not provide a reason or explanation for the suspension.  Supervisor Paul Teresi told Plaintiff to enjoy his vacation and not to worry because the suspension was meaningless.

119.     Despite Paul Teresi's statement before Plaintiff left for his annual vacation, Plaintiff suffered a five-day suspension without pay.  Defendant did not provide a reason or explanation for the five-day suspension without pay.

120.     In May 2021, a co-worker called Plaintiff; "Faggot" and sent Plaintiff a text directing him to "suck my d***."  Plaintiff complained to Defendant about the co-worker's behavior as being part of a hostile work environment, but no corrective action was taken.

121.     On November 5, 2021, Plaintiff met with Defendant's Interim Village Manager, Michael Bornstein, who informed Plaintiff of Defendant's decision to fire him.  Plaintiff requested an explanation for being fired.

122.     During the November 5, 2021, meeting, Village Manager Michael Bornstein stated that Plaintiff had made a name for himself by complaining repeatedly to management and the EEOC, that Village Manager had given Plaintiff time to clean his name, but Defendant's decision was made to defend Defendant's public interest.  As such, Plaintiff was fired in retaliation for his complaints about race discrimination and a racially hostile work environment.

123.     Defendant, by and through its agents and employees, engaged in the aforementioned

practices, policies, customs, and usages made unlawful by 42 U.S.C. §1981.

124.     The Discrimination that Plaintiff was subjected to on a regular, daily, and consistent basis commenced in 1998 and continued up and through the date of Plaintiff's termination.

125.     Plaintiff was subjected to a hostile work environment by Defendant because of his race.

126.     If Plaintiff had not been of Slavic origin, he would not have been subjected to a hostile work environment.

127.     Had Plaintiff not been of Slavic origin, Defendant would not have told Plaintiff that he was "the Russian", "fagot", "spy", "the enemy", "stupid", "weak", "crazy," "abnormal," and "dusty".

128.     Had Plaintiff not been of Slavic origin, Defendant would not have told other co-workers and Village residents not to call Plaintiff "the Russian", "fagot", "spy", "the enemy", "stupid", "weak", "crazy," "abnormal," and "dusty."

129.     Had Plaintiff not been of Slavic origin, and regarded as Russian, Defendant would not have threatened to fire Plaintiff.

130.     Had Plaintiff not been of Slavic origin, and regarded as Russian, Defendant would not have subjected Plaintiff to continuous insults, epithets, and taunts.

131.     As a direct and proximate result of Defendant's conduct that violated 42 U.S.C. §1981, Plaintiff suffered and continues to suffer damages, including lost wages, emotional distress, and attorneys' fees and costs.

132.     Defendant's actions were intentional, willful, harsh, oppressive, reckless, and malicious, and as a further and proximate cause, Plaintiff has suffered severe emotional distress, pain, and suffering. The wrongs done by the Defendant were aggravated by its willfulness, wantonness, and maliciousness for which the law allows the imposition of exemplary damages. Plaintiff, therefore,

seeks exemplary damages in a sum to be determined by the trier of fact to serve as punishment to deter Defendant from such conduct in similar situations.

133.     Defendant's actions as stated above, and the resulting damages to Plaintiff, have necessitated that Plaintiff retain the services of COANE AND ASSOCIATES, PLLC, to represent him in these proceedings. Wherefore, Plaintiff seeks recovery of reasonable and necessary attorney's fees.

## COUNT III: RETALIATION FOR COMPLAINTS OF RACE DISCRIMINATION UNDER 42 U.S.C. §1981

134.     Plaintiff incorporates the allegations made in Paragraphs 1 through 46 herein.

135.     Title 42 U.S.C. §1981, *inter alia*, protects employees from adverse employment actions in retaliation for complaining about race discrimination.

136.     Defendant, by and through its agents and employees, engaged in the aforementioned practices, policies, customs, and usages made unlawful by 42 U.S.C. §1981.

137.     Throughout his employment, Plaintiff complained to Defendant that he disliked being called "the Russian" because he found it to be humiliating, taunting, and belittling of his Slavic race.  Plaintiff explained Defendant's management employees that he was not born in Russia, he has never visited Russia, that Bulgaria is in an ancient European country, and that he was offended when being called "the Russian."

138.     From 2019 until November 5, 2021, Plaintiff suffered from severe and pervasive discriminatory conduct, targeted as an "enemy", and a "spy" and retaliated against after Plaintiff's multiple EEOC Charges complaining about Defendant's harassment and discriminatory practices, in the same nature as described above.

139.     Defendant's agents would use derogatory, taunting, and discriminatory terms in

reference to Plaintiff like "old", "dusty", and "weak" due to Plaintiff's age, (over 50).

140.     Younger, non-Slavic employees were treated and rated differently and more favorably than Plaintiff.   Younger, non-Slavic employees in the Utilities Department were not required to have the licenses and training required of Plaintiff.   Younger, non-Slavic employees were being considered, and given promotions ahead of Plaintiff.

141.     Plaintiff complained about the disparate, derogatory, and discriminatory behavior to Defendant's Human Resources agent Janette Piedra.  Upon receiving Plaintiff's complaint, Defendant's Human Resources agent Janette Piedra recommended that Plaintiff should consider retirement due to his age.

142.     During Plaintiff's time working for Defendant, Plaintiff was constantly harassed by Defendant's agents who were non-Slavic. For instance, Supervisor Paul Terezi, Supervisor Carlos Enriquez, Supervisor Andrew Klausner, Supervisor Orlando Guzman, and Foreman Joel Santiago (hereinafter "supervisors") made verbal discriminatory attacks against the Plaintiff by consistently calling him "the Russian," even after Plaintiff informed them that he is not Russian.

143.     The conduct of Defendant's management employers caused Plaintiff to become known by colleagues in the Utilities Department, employees from other departments, and residents of the Village of Palm Springs as "the Russian."

144.     In retaliation for his discrimination complaints, Defendant's agents, supervisors, and directors subjected Plaintiff to further mockery, taunting, and discrimination by utilizing the nickname "the Russian," and further used other discriminatory language, stereotypically associated with Russians, like "enemy", and "spy.  The discriminatory verbal attacks upon Plaintiff became widely spread and pervasive in the work environment of the Village of Palm Springs.

145.     In response to Plaintiff's numerous objections and complaints to managers, supervisors, and human resources, Defendant, through its directors, managers, and supervisors,

threatened to fire Plaintiff multiple times because of Plaintiff's complaints of discrimination and harassment.

146.    As a result of Plaintiff being subjected to the humiliation, harassment, and discrimination of being called "the Russian," Plaintiff was accused of being violent, prone to attacks using firearms, and wanting to create a shooting at the workplace.

147.    As a result of Plaintiff being subjected to the humiliation, of being called a "pedophile" by Defendant's management employees, law enforcement agents commenced an investigation of Plaintiff.  After the police arrived at the Defendant's Utility Department facility looking for Plaintiff, Supervisor Carlos Enriquez of Defendant walked into the workplace yelling "We caught the Russian!" Supervisor Carlos Enriquez continued stating that Defendant's employees have been chasing Plaintiff due to his race, and national origin and that they have "finally caught the Russian."

148.    As a result of the false allegations and the police investigation, Plaintiff suffered severe emotional distress, which caused him to suffer a heart attack.

149.    At or about June 2019, Defendant was subject to a cyber hack and was reportedly forced to pay ransom.  During the time of the hack, one of Plaintiff's supervisors, Orlando Guzman, accused Plaintiff of being responsible for the hack in front of his coworkers stating, "maybe the Russian did it."

150.    At or about the end of 2019, Plaintiff did not get recognized by Defendant for working for Defendant for twenty (20) years.  Non-Slavic employees were previously publicly recognized for working for Defendant for fifteen (15) years, a lesser time than Plaintiff's time working for Defendant.  Defendant did not recognize Plaintiff's loyalty to Defendant in retaliation for his race discrimination complaints.

151.    On April 10, 2020, Plaintiff again complained to Human Resources and Defendant's

Village manager about the on-going incidents of harassment and discrimination, including that on or about the end of 2019 and the beginning of 2020, Plaintiff told Supervisor Andrew Klausner that Plaintiff did not watch TV, nor did he like to use social media; and that Andrew Klausner told Defendant's manager and/or director, Ron Eyman, who then said that Plaintiff did not watch TV or use social media due to his (old) age.

152.    On April 10, 2020, Plaintiff again complained to Human Resources and Defendant's Village manager that Defendant's agent, Dean, a co-worker at Defendant sent text messages to Plaintiff where he expressed his desire for Plaintiff to perform oral sex on him (Dean).

153.    During the April 10, 2020, meeting, Defendant's agents reprimanded Plaintiff for his complaints, stating that his complaints wasted management's time and resources.   Defendant's agents threatened to issue Plaintiff a disciplinary write-up notice because of his discrimination complaints.

154.    After the April 10, 2020, meeting with Human Resources and the Village City Manager, Plaintiff continued to suffer from harassment.  On April 16, 2020, Plaintiff sent an email to Defendant's Human Resources representative, Janette Piedra, reporting the new public harassment of Supervisor Paul Teresi calling him a "Russian" after he expressed again his disapproval of being referred as a "Russian."

155.    At or about the summer of 2020, while Plaintiff was preparing for his annual vacation trip to Bulgaria, Defendant suspended Plaintiff.  Defendant did not provide a reason or explanation for the suspension.  Supervisor Paul Teresi told Plaintiff to enjoy his vacation and not to worry because the suspension was meaningless.

156.    Despite Paul Teresi's statement before Plaintiff left for his annual vacation, Plaintiff suffered a five-day suspension without pay.  Defendant did not provide a reason or explanation for the five-day suspension without pay.

157.    In May 2021, a co-worker called Plaintiff; "Faggot" and sent Plaintiff a text directing him to "suck my d***."  Plaintiff complained to Defendant about the co-worker's behavior as being part of a hostile work environment, but no corrective action was taken.

158.    On November 5, 2021, Plaintiff met with Defendant's Interim Village Manager, Michael Bornstein, who informed Plaintiff of Defendant's decision to fire him.  Plaintiff requested an explanation for being fired.

159.    During the November 5, 2021, meeting, Village Manager Michael Bornstein stated that Plaintiff had made a name for himself by complaining repeatedly to management and the EEOC, that Village Manager had given Plaintiff time to clean his name, but Defendant's decision was made to defend Defendant's public interest.  As such, Plaintiff was fired in retaliation for his complaints about discrimination and a hostile work environment.

160.    Had Plaintiff not asserted his right to be free from race discrimination, Defendant would not have terminated Plaintiff's employment.

161.    As a direct and proximate result of the Defendant's conduct that violated 42 U.S.C. §1981, Plaintiff suffered damages, including lost wages, emotional distress, and attorneys' fees and costs.

162.    Defendant's actions were intentional, willful, harsh, oppressive, reckless, and malicious, and as a further and proximate cause, Plaintiff has suffered severe emotional distress, pain, and suffering. The wrongs done by the Defendant were aggravated by its willfulness, wantonness, and maliciousness for which the law allows the imposition of exemplary damages. Plaintiff, therefore, seeks exemplary damages in a sum to be determined by the trier of fact to serve as punishment to deter Defendant from such conduct in similar situations.

163.    Defendant's actions as stated above, and the resulting damages to Plaintiff, have necessitated that Plaintiff retain the services of COANE AND ASSOCIATES, PLLC, and to represent

27

him.

## COUNT IV: DISCRIMINATION BASED ON RACE AND NATIONAL ORIGIN UNDER 42 U.S.C. § 2000e

164.    Plaintiff incorporates the allegations made in Paragraphs 1 through 46 herein.

165.    Title 42 U.S.C. §2000e, *inter alia*, protects employees from employment discrimination on the basis of race and on the basis of national origin.

166.    Defendant, by and through its agents and employees, engaged in the aforementioned practices, policies, customs, and usages made unlawful by 42 U.S.C. §2000e.

167.    Plaintiff was the only employee of Slavic origin working for Defendant from 1998 through 2021.  Plaintiff was born in Bulgaria and speaks with a Bulgarian/Russian accent.

168.    At the time of Plaintiff's termination, he was working at the Utilities Department under the supervision of Lazaro Farley and Director Paul Ward.

169.    The Discrimination that Plaintiff was subjected to on a regular, daily, and consistent basis commenced in 1998 and continued up and through the date of Plaintiff's termination on November 5, 2021.

170.    At all times relevant hereto Defendant's agents have referred to Plaintiff as "the Russian," "fagot," "spy," "the enemy," "stupid," "weak," "crazy," "abnormal," and "dusty" because of his male sex, Bulgarian national origin, Slavic race, and his age (over 50).

171.    Prior to the pertinent EEOC Charge filed in 2022, Plaintiff filed multiple charges with the EEOC due to the continuous discrimination and harassment experienced while working for Defendant, as shown by the following events:

172.    On or about 2013, Plaintiff was working in a water main line on Davis Road in front of the City Hall of the Village of Palm Springs. In the presence of Village Manager Karl Uremberger,

Director William Davis, Supervisor Paul Teresi, and other colleagues, Superintendent Mike Snook falsely asserted that Plaintiff is a "pedophile." Plaintiff, suffering from embarrassment, left and jumped into one of Defendant's unoccupied cars to avoid further embarrassment.

173.    On a subsequent occasion, Plaintiff was humiliated because of his sex, race, and national origin while working at Defendant's Main Water Plant, which is an open warehouse space where multiple employees are continuously working or waiting for work to be assigned, by one of Defendant's management employees. Plaintiff encountered Ed Horton and Supervisor Paul Teresi. Randomly, Ed Horton asked Plaintiff, "Hey Tony (Plaintiff) can I ask you something? Why don't you suck my dick?" Plaintiff reported the sexual harassment conduct to Superintendent Mike Snook, but no action was taken by Defendant that stop the discriminatory conduct.

174.    On or about 2016, Plaintiff reported to the Village manager, Richard Riede, that he was being subject to discrimination and harassment from Supervisor Carlos Enriquez calling him "a faggot" and "a Russian." After reporting Supervisor Carlos Enriquez's behavior, Plaintiff was retaliated against by Supervisor Carlos Enriquez by continuing the discriminatory insults due to Plaintiff's sex, race, and national origin.

175.    On or about 2017, Plaintiff was humiliated in front of his colleagues when Joel Santiago publicly announced loudly, "Tony, I am now convinced that you are not a fagot!". The word "faggot" is humiliating, derogatory, and hateful.

176.    From 2019 until November 5, 2021, Plaintiff suffered from severe and pervasive discriminatory conduct, targeted as an "enemy", and a "spy" and retaliated against after Plaintiff's multiple EEOC Charges complaining about Defendant's harassment and discriminatory practices, in the same nature as described above.

177.    Defendant's agents would use derogatory, taunting, and discriminatory terms in reference to Plaintiff like "old", "dusty", and "weak" due to Plaintiff's age, (over 50).  Younger, non-

Slavic, non-Bulgarian employees were not subjected to discriminatory taunts.

178.     Younger, non-Slavic, non-Bulgarian employees were treated and rated differently and more favorably than Plaintiff.  Younger, non-Slavic employees in the Utilities Department were not required to have the licenses and training required of Plaintiff.   Younger, non-Slavic employees were being considered, and given promotions ahead of Plaintiff.

179.     Plaintiff complained about the disparate, derogatory, and discriminatory behavior to Defendant's Human Resources agent Janette Piedra.   Upon receiving Plaintiff's complaint, Defendant's Human Resources agent Janette Piedra recommended that Plaintiff should consider retirement due to his age.

180.     During Plaintiff's time working for Defendant, Plaintiff was constantly harassed by Defendant's agents who were non-Slavic and non-Bulgarian.  For instance, Supervisor Paul Terezi, Supervisor Carlos Enriquez, Supervisor Andrew Klausner, Supervisor Orlando Guzman, and Foreman Joel Santiago (hereinafter "supervisors"), who are all non-Bulgarian and non-Slavic, made verbal discriminatory attacks against the Plaintiff by consistently calling him "the Russian," even after Plaintiff informed them that he is not Russian.

181.     Throughout his employment, Plaintiff complained to Defendant that he disliked being called "the Russian" because he found it to be humiliating, taunting, and belittling of his Slavic race and Bulgarian national origin.  Plaintiff explained Defendant's management employees that he was not born in Russia, he has never visited Russia, that Bulgaria is in an ancient European country, and that he was offended when being called "the Russian."

182.     The conduct of Defendant's management employers caused Plaintiff to become known by colleagues in the Utilities Department, employees from other departments, and residents of the Village of Palm Springs as "the Russian."

183.     In retaliation for his discrimination complaints, Defendant's agents, supervisors, and

directors subjected Plaintiff to further mockery, taunting, and discrimination by utilizing the nickname "the Russian," and further used other discriminatory language, stereotypically associated with Russians, like "enemy", and "spy.  The discriminatory verbal attacks upon Plaintiff became widely spread and pervasive in the work environment of the Village of Palm Springs.

184.    In response to Plaintiff's numerous objections and complaints to managers, supervisors, and human resources, Defendant, through its directors, managers, and supervisors, threatened to fire Plaintiff multiple times because of Plaintiff's complaints of discrimination and harassment.

185.    As a result of Plaintiff being subjected to the humiliation, harassment, of the race and national origin discrimination of being called "the Russian," Plaintiff was wrongfully accused of being violent, prone to attacks using firearms, and wanting to create a shooting at the workplace.

186.    As a result of Plaintiff being subjected to the race and national origin discrimination in the form of the humiliation of being wrongfully accused of being a "pedophile" by Defendant's management employees, law enforcement agents commenced an investigation of Plaintiff.  When the police arrived at the Defendant's Utility Department facility looking for Plaintiff, Supervisor Carlos Enriquez of Defendant walked into the workplace yelling: "We caught the Russian!" Supervisor Carlos Enriquez continued stating that Defendant's employees have been chasing Plaintiff due to his race, and national origin and that they have "finally caught the Russian."

187.    As a result of the race and national origin based false allegations and the resulting police investigation, Plaintiff suffered severe emotional distress, which caused him to suffer a heart attack.

188.    At or about June 2019, Defendant was subject to a cyber hack and was reportedly forced to pay ransom.  During the time of the hack, one of Plaintiff's supervisors, Orlando Guzman, accused Plaintiff of being responsible for the hack in front of his coworkers stating, "maybe the

Russian did it."

189.    At or about the end of 2019, Plaintiff did not get recognized by Defendant for working for Defendant for twenty (20) years.  Non-Slavic, non-Bulgarian employees were previously publicly recognized for working for Defendant for fifteen (15) years, a lesser time than Plaintiff's time working for Defendant.  Defendant did not recognize Plaintiff's loyalty to Defendant because of Plaintiff's race, national origin, age, sex and in retaliation for his discrimination complaints.

190.    Plaintiff made multiple attempts to meet with Defendant's management, directors, and/or supervisors to complain about the on-going discrimination.  However, Defendant's agents maliciously, purposefully, and knowingly denied Plaintiff the opportunity to express his complaints.

191.    On April 10, 2020, Plaintiff again complained to Human Resources and Defendant's Village manager about the on-going incidents of harassment and discrimination, including that on or about the end of 2019 and the beginning of 2020, Plaintiff told Supervisor Andrew Klausner that Plaintiff did not watch TV, nor did he like to use social media; and that Andrew Klausner told Defendant's manager and/or director, Ron Eyman, who then said that Plaintiff did not watch TV or use social media due to his (old) age.

192.    On April 10, 2020, Plaintiff again complained to Human Resources and Defendant's Village manager that Defendant's agent, Dean, a co-worker at Defendant sent text messages to Plaintiff where he expressed his desire for Plaintiff to perform oral sex on him (Dean).

193.    During the April 10, 2020, meeting, Defendant's agents reprimanded Plaintiff for his complaints, stating that his complaints wasted management's time and resources.   Defendant's agents threatened to issue Plaintiff a disciplinary write-up notice because of his discrimination complaints.

194.    After the April 10, 2020, meeting with Human Resources and the Village City Manager, Plaintiff continued to suffer from harassment.  On April 16, 2020, Plaintiff sent an email

to Defendant's Human Resources representative, Janette Piedra, reporting the new public racial and national origin harassment of Supervisor Paul Teresi calling him a "Russian" after Plaintiff expressed again his disapproval of being referred as a "Russian."

195.   At or about the summer of 2020, while Plaintiff was preparing for his annual vacation trip to Bulgaria, Defendant suspended Plaintiff.  Defendant did not provide a reason or explanation for the suspension.  Supervisor Paul Teresi told Plaintiff to enjoy his vacation and not to worry because the suspension was meaningless.

196.   Despite Paul Teresi's statement before Plaintiff left for his annual vacation, Plaintiff suffered a five-day suspension without pay.  Defendant did not provide a reason or explanation for the five-day suspension without pay.

197.   In May 2021, a co-worker called Plaintiff; "Faggot" and sent Plaintiff a text directing Plaintiff to "suck my d***."  Plaintiff complained to Defendant about the co-worker's behavior as being part of a hostile work environment, but no corrective action was taken.

198.   On November 5, 2021, Plaintiff met with Defendant's Interim Village Manager, Michael Bornstein, who then informed Plaintiff of Defendant's decision to fire him.  Plaintiff requested an explanation for being fired.

199.   During the November 5, 2021, meeting, Village Manager Michael Bornstein stated that Plaintiff had made a name for himself by complaining repeatedly to management and the EEOC, that Village Manager had given Plaintiff time to clean his name, but Defendant's decision to discharge Plaintiff was made to defend Defendant's public interest.  As such, Plaintiff was fired in retaliation for his complaints about race and national origin discrimination and a racially hostile work environment.

200.   Defendant, by and through its agents and employees, engaged in the aforementioned practices, policies, customs, and usages made unlawful by 42 U.S.C. §1981.

201.     The Discrimination that Plaintiff was subjected to on a regular, daily, and consistent basis commenced in 1998 and continued up and through the date of Plaintiff's termination.

202.     Plaintiff was subjected to a hostile work environment by Defendant because of his race and national origin.

203.     If Plaintiff had not been of Slavic and Bulgarian origin, he would not have been subjected to a hostile work environment.

204.     Had Plaintiff not been of Slavic and Bulgarian origin, Defendant would not have told Plaintiff that he was "the Russian", "fagot", "spy", "the enemy", "stupid", "weak", "crazy," "abnormal," and "dusty".

205.     Had Plaintiff not been of Slavic and Bulgarian origin, Defendant would not have told other co-workers and Village residents not to call Plaintiff "the Russian", "fagot", "spy", "the enemy", "stupid", "weak", "crazy," "abnormal," and "dusty."

206.     Had Plaintiff not been of Slavic and Slavic origin, and regarded as Russian, Defendant would not have threatened to fire Plaintiff.

207.     Had Plaintiff not been of Slavic and Bulgarian origin, and regarded as Russian, Defendant would not have subjected Plaintiff to continuous insults, epithets, and taunts.

208.     As a direct and proximate result of Defendant's conduct that violated 42 U.S.C. §1981, Plaintiff suffered and continues to suffer damages, including lost wages, emotional distress, and attorneys' fees and costs.

209.     Defendant's actions were intentional, willful, harsh, oppressive, reckless, and malicious, and as a further and proximate cause, Plaintiff has suffered severe emotional distress, pain, and suffering. The wrongs done by the Defendant were aggravated by its willfulness, wantonness, and maliciousness for which the law allows the imposition of exemplary damages. Plaintiff, therefore, seeks exemplary damages in a sum to be determined by the trier of fact to serve as punishment to

deter Defendant from such conduct in similar situations.

210.    Defendant's actions as stated above, and the resulting damages to Plaintiff, have necessitated that Plaintiff retain the services of COANE AND ASSOCIATES, PLLC, to represent him in these proceedings. Wherefore, Plaintiff seeks recovery of reasonable and necessary attorney's fees.

## COUNT V: DISCRIMINATION BASED ON SEX DISCRIMINATION UNDER 42 U.S.C. § 2000e, et seq.

211.    Plaintiff incorporates the allegations made in Paragraphs 1 through 46 herein.

212.    Defendant, by and through their agents and employees, intentionally engaged in the aforementioned practices, policies, customs, and usages made unlawful by Title VII, 42 U.S.C. §2000e (1), and directly discriminated against Plaintiff because of his sex, by harassing him and firing him due to his sex.

213.    Defendant by and through their agents, have maintained a policy of sex discrimination in violation of the foregoing statute against Plaintiff.

214.    Prior to the pertinent EEOC Charge filed in 2022, Plaintiff filed multiple charges with the EEOC due to the continuous discrimination and harassment experienced while working for Defendant, as shown by the following events:

215.    On or about 2013, Plaintiff was working in a water main line on Davis Road in front of the City Hall of the Village of Palm Springs. In the presence of Village Manager Karl Uremberger, Director William Davis, Supervisor Paul Teresi, and other colleagues, Superintendent Mike Snook falsely asserted that Plaintiff is a "pedophile." Plaintiff, suffering from embarrassment, left and jumped into one of Defendant's unoccupied cars to avoid further embarrassment.

216.    On a subsequent occasion, Plaintiff was humiliated because of his sexual orientation

and his national origin while working at Defendant's Main Water Plant, which is an open warehouse space where multiple employees are continuously working or waiting for work to be assigned, by one of Defendant's management employees. Plaintiff encountered Ed Horton and Supervisor Paul Teresi. Randomly, Ed Horton asked Plaintiff, "Hey Tony (Plaintiff) can I ask you something? Why don't you suck my dick?" Plaintiff reported the sexual harassment conduct to Superintendent Mike Snook, but no action was taken by Defendant that stop the discriminatory conduct.

217.    On or about 2016, Plaintiff reported to the Village manager, Richard Riede, that he was being subject to discrimination and harassment from Supervisor Carlos Enriquez calling him "a faggot" and "a Russian." After reporting Supervisor Carlos Enriquez's behavior, Plaintiff was retaliated against by Supervisor Carlos Enriquez by continuing the discriminatory insults due to Plaintiff's sex, race, and national origin.

218.    On or about 2017, Plaintiff was humiliated in front of his colleagues when Joel Santiago publicly announced loudly, "Tony, I am now convinced that you are not a fagot!". The word "faggot" is humiliating, derogatory, and hateful.

219.    On April 10, 2020, Plaintiff again complained to Human Resources and Defendant's Village manager about the on-going incidents of harassment and discrimination, including that Defendant's agent, Dean, a co-worker at Defendant sent text messages to Plaintiff where he expressed his desire for Plaintiff to perform oral sex on him (Dean).

220.    During the April 10, 2020, meeting, Defendant's agents reprimanded Plaintiff for his complaints, stating that his complaints wasted management's time and resources.   Defendant's agents threatened to issue Plaintiff a disciplinary write-up notice because of his discrimination complaints.

221.    After the April 10, 2020, meeting with Human Resources and the Village City Manager, Plaintiff continued to suffer from harassment.

222.     In May 2021, a co-worker called Plaintiff; "Faggot" and sent Plaintiff a text directing him to "suck my d***."  Plaintiff complained to Defendant about the co-worker's behavior as being part of a hostile work environment, but no corrective action was taken.

223.     On November 5, 2021, Plaintiff met with Defendant's Interim Village Manager, Michael Bornstein, who informed Plaintiff of Defendant's decision to fire him.  Plaintiff requested an explanation for being fired.

224.     During the November 5, 2021, meeting, Village Manager Michael Bornstein stated that Plaintiff had made a name for himself by complaining repeatedly to management and the EEOC, that Village Manager had given Plaintiff time to clean his name, but Defendant's decision was made to defend Defendant's public interest.  As such, Plaintiff was fired because of his sex.

## COUNT VI: RETALIATION FOR COMPLAINTS OF DISCRIMINATION UNDER 42 U.S.C. §2000e

225.     Plaintiff incorporates the allegations made in Paragraphs 1 through 46 herein.

226.     Title VII of the Civil Rights Act of 1964 (42 U.S.C. §2000e), protects employees from adverse employment actions in retaliation for complaining about race, national origin, and sex discrimination.

227.     Defendant, by and through its agents and employees, engaged in the aforementioned practices, policies, customs, and usages made unlawful by 42 U.S.C. §2000e.

228.     Between 2011 and 2021, Plaintiff complained to Defendant and to the U.S. Equal Employment Opportunity Commission (EEOC) that he was suffering from race, national origin, and sex discrimination, within the meaning of Title VII.

229.     In retaliation for Plaintiff's discrimination complaints, Defendant's agents, supervisors, and directors subjected Plaintiff to further mockery, taunting, and discrimination so

severe and pervasive as to create a hostile work environment.

230.     In response to Plaintiff's discrimination complaints to managers, supervisors, and human resources and the EEOC, Defendant, through its directors, managers, and supervisors, threatened to fire Plaintiff, and did eventually fire Plaintiff in retaliation for his discrimination complaints.

231.     Prior to the pertinent EEOC Charge Filed in 2022, Plaintiff filed multiple charges with the EEOC due to the continuous discrimination and harassment experienced while working for Defendant.

232.     From 2019 until November 5, 2021, Plaintiff suffered from severe and pervasive discriminatory conduct, targeted as an "enemy", and a "spy" and retaliated against after Plaintiff's multiple EEOC Charges complaining about Defendant's harassment and discriminatory practices.

233.     On April 16, 2020, Plaintiff sent an email to Defendant's human resources representative, Janette Piedra, reporting the new public harassment and embarrassment suffered when Samuel Rodriguez called him a "fool" and when Supervisor Paul Teresi called him a "Russian" after he expressed again his disapproval of being referred as a "Russian" because Plaintiff finds it offensive.

234.     In retaliation for Plaintiff's complaints of racial discrimination, at or about the summer of 2020, while preparing for Plaintiff's annual vacation trip to Bulgaria, Defendant suspended Plaintiff without pay. Defendant did not provide a reason or explanation for the one-day suspension.

235.     Subsequently, in or about the summer of 2020, while Plaintiff was on his annual vacation trip in Bulgaria, Plaintiff received a lesser amount than expected in his paycheck. Upon return to work, Defendant informed him that he had a subsequent five-day suspension without pay. Defendant did not provide a reason or explanation for the five-day suspension.

236.     On November 5, 2021, Plaintiff received a call from Defendant's Interim Village Manager, Michael Bornstein, who informed Plaintiff of Defendant's decision to fire him. Plaintiff requested an explanation for being fired. Michael Bornstein stated that he had made a name for himself by complaining repeatedly to management and the EEOC and that Defendant's decision was done to defend Defendant's public interest. As such, Plaintiff's employment was terminated in retaliation for his complaints of race discrimination.

237.     Had Plaintiff not asserted his right to be free from race and national origin discrimination by multiple complaints with the EEOC, Defendant would not have terminated Plaintiff's employment.

238.     As a direct and proximate result of the Defendant's conduct that violated 42 U.S.C. §2000e, Plaintiff suffered damages, including lost wages, emotional distress, and attorneys' fees and costs.

239.     Defendant's actions were intentional, willful, harsh, oppressive, reckless, and malicious, and as a further and proximate cause, Plaintiff has suffered severe emotional distress, pain, and suffering. The wrongs done by the Defendant were aggravated by its willfulness, wantonness, and maliciousness for which the law allows the imposition of exemplary damages. Plaintiff, therefore, seeks exemplary damages in a sum to be determined by the trier of fact to serve as punishment to deter Defendant from such conduct in similar situations.

240.     Defendant's actions as stated above, and the resulting damages to Plaintiff, have necessitated that Plaintiff retain the services of COANE AND ASSOCIATES, PLLC, to represent him in these proceedings. Wherefore, Plaintiff seeks recovery of reasonable and necessary attorneys' fees.

### COUNT VII: DISCRIMINATION BASED ON AGE UNDER THE AGE DISCRIMINATION IN EMPLOYMENT ACT (ADEA), 29 U.S.C. § 621, *et seq.*

241.     Plaintiff incorporates the allegations made in Paragraphs 1 through 46 herein.

242.     The Age Discrimination in Employment Act of 1967 (Title 29 U.S.C. § 621, as amended), protects employees from employment discrimination on the basis of age.

243.     Defendant, by and through its agents and employees, engaged in the aforementioned practices, policies, customs, and usages made unlawfully by 29 U.S.C. § 621.

244.     Defendant's agents would use derogatory, taunting, and discriminatory terms in reference to Plaintiff like "old", "dusty", and "weak" due to Plaintiff's age, (over 50).

245.     Younger employees were treated and rated differently and more favorably than Plaintiff.  Younger employees were not required to have the same licenses and training that Plaintiff was required to have. Younger employees were being considered, and given promotions ahead of an Plaintiff.

246.     On or about the end of 2019 and the beginning of 2020, Plaintiff told Supervisor Andrew Klausner that Plaintiff did not watch TV, nor did he like to use social media. Andrew Klausner told Defendant's manager and/or director, Ron Eyman, and Ron Eyman mocked Plaintiff saying that Plaintiff did not watch TV or use social media due to his age.

247.     Plaintiff complained about the disparate, derogatory, and discriminatory behavior to Defendant's Human Resources agent Janette Piedra. Upon receiving Plaintiff's complaint, Defendant's Human Resources agent Janette Piedra recommended that Plaintiff should consider retirement due to his old age.

248.     Plaintiff's employment was terminated because his age was over 50.

249.     Had Plaintiff not been over 50, Defendant would not have terminated Plaintiff's employment.

250.     As a direct and proximate result of Defendant's conduct that violated 29 U.S.C. §

40

621, Plaintiff suffered damages, including lost wages and attorney's fees and costs.

251.     Defendant's actions were intentional, willful, harsh, oppressive, reckless, and malicious. The wrongs done by Defendant were aggravated by its willfulness, wantonness, and maliciousness for which the law allows the imposition of liquidated damages. Plaintiff, therefore, seeks liquidated damages.

252.     Defendant's actions as stated above, and the resulting damages to Plaintiff, have necessitated that Plaintiff retain the services of COANE AND ASSOCIATES, PLLC, to represent him in these proceedings. Wherefore, Plaintiff seeks recovery of reasonable and necessary attorneys' fees.

## COUNT VIII: RETALIATION FOR AGE DISCRIMINATION COMPLAINTS UNDER THE ADEA

253.     Plaintiff incorporates the allegations made in Paragraphs 1 through 46 herein.

254.     The Age Discrimination in Employment Act of 1967 (Title 29 U.S.C. § 621, as amended), protects employees from employment discrimination on the basis of age.

255.     Plaintiff complained about the disparate, derogatory, and discriminatory behavior to Defendant's Human Resources agent Janette Piedra. Upon receiving Plaintiff's complaint, Defendant's Human Resources agent Janette Piedra recommended that Plaintiff should consider retirement due to his age.  During a November 5, 2021, meeting with Village Manager Michael Bornstein, Mr. Berstein stated that Plaintiff had made a name for himself by complaining repeatedly to management about discrimination, that Village Manager had given Plaintiff time to clean his name, but Defendant's decision was made to defend Defendant's public interest.  As such, Plaintiff was fired in retaliation for complaining about age discrimination.

256.     Defendant's actions were intentional, willful, harsh, oppressive, reckless, and malicious. The wrongs done by the Defendant were aggravated by its willfulness, wantonness, and

maliciousness for which the law allows the imposition of liquidated and punitive damages. Plaintiff, therefore, seeks liquidated and punitive damages.

257.     As a direct and proximate result of Defendant's violation of law, as described herein, Plaintiff was required to retain the services of COANE AND ASSOCIATES, PLLC, to represent him in these proceedings. Wherefore, Plaintiff seeks recovery of reasonable and necessary attorneys' fees.

## JURY TRIAL DEMANDED

258.     Plaintiff demands a trial by jury for all issues so triable.

WHEREFORE, Plaintiff requests compensatory damages, lost wages (past, present, and future), punitive damages, and reasonable attorney fees from Defendant pursuant to 42 U.S.C. §1981, 42 U.S.C. §2000e, 29 U.S.C. § 621, and any other applicable authority (statute/law, etc.), to be proven at the time of trial, and attorneys' fees and costs along with any other relief that this Court finds reasonable under the circumstances.

Respectfully submitted,

By: */s/ Donald C. Tyler*_____
**Donald C. Tyler**
Fla. Bar #562998
Email: donald.tyler@coane.com
**Benjamin Chistov**
Fla. Bar #1044307
Email: Benjamin.chistov@coane.com
**Arthur Mandel**
Fla. Bar #22753
Email: arthur.mandel@coane.com
**Jurgen Negron**
Fla. Bar #0123892
Email: jurgen.negron@coane.com
**Coane and Associates, PLLC**
1250 E. Hallandale Beach Blvd., PH-2
Hallandale Beach, FL 33009
Telephone: 305-538-6800

Facsimile: 832-558-1780

***ATTORNEYS FOR PLAINTIFF***